## THE LITTLE.

## THE MARS.

(District Court, S. D. New York. December 2, 1908.)

COLLISION (§ 61*)—ADMIRALTY (§ 34*)—EVIDENCE—LACHES.

Collision in the Providence River, Rhode Island, between the tows of the tug Little and the tug Mars in 1902. The Little exonerated and the Mars held because she was not navigating on the starboard side of the channel. The defence of laches not sustained as the purchaser of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mars received a warranty bill of sale of the vessel and it appearing that the vendors were of financial responsibility, and further that they were in fact defending the vessel in this action.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 61;* Admiralty, Cent. Dig. §§ 316–321; Dec. Dig. § 34.*]

(Syllabus by the Judge.)

James J. Macklin, for libellants.

Carpenter, Park & Symmers, for the Little.

Alexander & Ash, for the Mars.

ADAMS, District Judge.    This action was brought by Clinton Robinson and others, as owners of the barge I. Townsend Burden, against the steamtugs Little and Mars to recover the damages alleged to have been sustained by them through a collision between the Burden, in tow of the Little, with 3 other light barges on hawsers tandem, and the barge Forest Belle in tow on the port side of the tug Mars, about 8 o'clock P. M., on the 23d of March, 1902, in the Providence River, near Conimicut Point.    The Little was going down the river, bound from Providence to New York, and the Mars was going up the river, proceeding to Providence.    The libel alleges that the leading barge in the Little's tow was made fast to her by a hawser running from the Little, the Burden being the third barge in the tow; that the tugs exchanged signals of one whistle each before meeting and they attempted to pass so close to each other on the port side that the Forest Belle struck the port bow of the barge Emma, thus bringing the Burden onto the second barge, the Tice, and the Emma, doing serious damage, estimated at $900, to the Burden.    The allegations of fault against the Little are: (1) in that she failed to keep a proper lookout, (2) in that she did not give sufficient space in passing, (3) in that she did not sound alarm whistles; and the Mars was in fault: (1) in not keeping a proper lookout, (2) in not sounding alarm whistles, (3) in not keeping on the right hand side of the channel, (4) in not porting sufficiently, (5) in crowding the Little and her tow, and (6) in not reducing her speed, or stopping and backing before the collision.

The Little, after some admissions and denials, alleged:

"Seventh: Further answering, upon information and belief the claimants allege that on or about 5:30 P. M. on the 23d day of March, 1902, the steamtug 'R. B. Little,' well manned and equipped, left the port of Providence, R. I. having in tow the barge 'Emma,' 'George S. Tice,' 'I. Townsend Burden' and 'William H. McClave' bound for New York, all light.    The barges were made up in tandem fashion in the order above named.    The barges were all upon short hawsers and the regulation lights of the steamtug and all the barges were in their proper places and brightly burning.    At about 7:30 P. M. a few minutes after passing Conimicut Point Light, a steamtug was observed bound up towards Providence a little on the port bow of the 'Little.'    At this time the steamtug 'Little' was in the western half of the channel and gave a signal of one blast to the approaching steamtug and received a reply of one blast of the approaching steamtug's whistle.    The helm of the 'Little' was put to port, bringing her well over upon the right hand or westerly side of the channel. The weather was clear, there was a light breeze from the southeast, tide about full flood.    The master of the 'Little' was in charge of her navigation; first a red light was observed upon the 'Mars' and three staff lights; afterwards two red lights and a green light of the tug and also a green light of a barge

were observed. Those in charge of the navigation of the 'Little' had at first supposed that the approaching steamtug's tow was behind on a hawser until the steamtugs were close by each other. The 'Mars' and her tow made fast to her port side passed the 'Little' and her tow port to port a safe distance away. The 'Mars' kept on apparently without any change of course. The port bow of the 'Forest Belle' came in collision with the port side of the 'Emma' the 'Forest Belle's' port anchor catching the port rail of the 'Emma,' the anchor chain upon the barge paying out, holding the 'Emma' fast. The 'Forest Belle' likewise with her port bow also struck the port side of the barge 'George S. Tice,' and upon information and belief the stem of the barge 'I. Townsend Burden' struck the stern of the 'Tice,' the barge immediately ahead of her. That the collision occurred to the westward of the middle line of the channel. After anchoring the 'Tice,' the 'I. Townsend Burden' and the 'McClave,' the 'Emma' was towed back to Providence by the 'Little,' and the 'Little' subsequently towed the three other barges to New York."

It was further alleged by the Little that the collision was not produced by any fault on her part but was due to the faults of the Mars: (1) In that the Mars was showing three staff lights while having the Forest Belle upon her own port side and no other vessels in tow; (2) in that the Mars failed to port her wheel after the exchange of the signals of one whistle; (3) in that the Mars failed to keep on the right hand side of the channel; (4) in that the Mars failed to maintain a proper lookout, and (5) in that the Mars failed to stop and reverse. The Mars, after some denials and admissions, alleged:

"Sixth: On the 23d day of March, 1902, the tug 'Mars' with the barge 'Forest Belle,' deeply laden with a cargo of coal, in tow, was bound for Providence, Rhode Island. On the evening of said day, after the tug and tow had entered Narragansett Bay, the 'Mars' picked up her tow, made the 'Forest Belle' fast alongside on the tug's port side, and with her tow thus adjusted continued on said voyage. The weather at the time was clear, wind light, tide flood, and the said tug and tow had their regulation lights all set and brightly burning. The tug had a competent master in command, a good and sufficient lookout, properly stationed, attending to duty, and was in every respect carefully and skillfully navigated.

Seventh: As the 'Mars' was proceeding on her voyage as aforesaid, a tug, which afterward proved to be the 'R. B. Little,' with four light barges in tow on a hawser was made out off the starboard bow of the 'Mars,' showing her green and mast head lights, coming in the opposite direction. The 'Mars' and tow were then on the easterly or starboard side of the channel. Owing to the draft of the 'Forest Belle,' she and the tug were restricted in their navigation to the deep water in the channel, whereas the tow of the tug 'Little,' being light had sufficient water for safe navigation beyond the limits of the channel. Some time after the 'Little' and tow had been observed by those in charge of the 'Mars', she blew a signal of one whistle to the 'Mars,' which the latter immediately answered with a signal of one whistle. Thereupon the wheels of the 'Mars' and her tow were put to port and said tug and tow thereby sheered to starboard. As the 'Little' did not sheer sufficiently to port, the 'Mars' blew an alarm whistle and stopped and reversed and continued backing under full power until the vessels came together as hereinafter set forth.

No reply was given by the 'Little' to the alarm whistles of the 'Mars,' and the tug 'Little' continuing at a high rate of speed, ran the first barge of her tow into collision with the 'Forest Belle,' striking the latter on her port bow and catching her anchor and also causing the second barge in her tow to strike the port bow of the 'Forest Belle.' At the time of the contact, the 'Mars,' under the influence of her reversed engine, was lying at rest in the water as near to the easterly or starboard side of the channel as was safe and prudent, in view of the draft of herself and tow."

The Mars further alleged that the collision was solely caused by faults on the part of the Little and the Burden. As to the Little: (1)

In that she did not have a competent master in command, attending to duty; (2) in that she did not have a competent lookout; (3) in that she had her tow on too long a hawser; (4) in that she did not blow a signal of two whistles to the Mars and pass her starboard to starboard; (5) in that she blew a signal of one whistle to the Mars and attempted to cross the bows of the latter; (6) in that after giving a signal of one whistle to the Mars and receiving an answering signal of one whistle she did not port her wheel promptly and sufficiently; (7) in that she attempted to pass too close to the Mars, without necessity; (8) in that she did not keep away from the Mars and tow; (9) in that she did not answer the alarm whistles of the Mars and stop and back in time to avoid collision, and (10) in that although her tow was over 600 feet in length, she exhibited only 2 mast head lights. As to the Burden: (1) In that she did not maintain a lookout; (2) in that she did not port her wheel and sheer to starboard in conformity with the signals of the tugs; (3) in that she did not cast off her hawser when she saw the port barge was coming into collision with the Forest Belle, and (4) in that she did not cast off her hawser and anchor.

The testimony discloses no fault on the part of the Burden. She properly followed the tug in conformity with the signals. It is possible that the tow in rounding Conimicut Point was somewhat to the eastward of the Little, but the barge was not in fault for that, she followed as closely as she could, and being under the control of the tug, no blame can be imputed to her.

The real question in the case is whether one or the other of the tugs or both, are responsible for the collision. It appears that prior to rounding the point, 200 or 300 feet off, the master of the Little saw the Mars coming up, and when the Little rounded, he blew a signal of one blast to the Mars, which the latter answered with a similar signal. Both ported but the trouble was that the Mars was then too far to the westward and was not able to obtain her proper position on the starboard side of the channel, hence while the tugs passed safely, the tows collided, causing the damage to the Burden. The real cause of the collision was the original attempt of the Mars to navigate on the port side of the channel, which she only relinquished when the Little announced her intention of following the rule. The Mars then tried to follow it also but it was too late. If she had been where the law required her to be, there would have been no trouble. The channel was about a quarter of a mile wide at the Point and broadened considerably below. The Mars' attempt to pass to the starboard of the Little carried her well to the westerly side of the channel and the collision took place there, a short distance above a point opposite buoy No. 7. It seems that the collision was entirely due to this fault of the Mars and the other allegations may be disregarded.

Another question in the case is whether the libellants were guilty of such laches in their proceedings as to bar a recovery from the Mars. It appears that she was owned in Philadelphia and was engaged in towing, principally between that place and points east. On her trips she stopped occasionally in New York Harbor. The libellants brought the action here, secured service of the libel upon the Little and declined

to go elsewhere to proceed against the Mars, but waited until they could seize her in the waters of this district, so that the action against both tugs could be tried together. They were alert for the purpose of getting the Mars, at one time finding her fastened to a wharf in Jersey City, where she could not be seized and from where she escaped. They made many attempts without success and did not catch her in this jurisdiction until April, 1907. During the lapse of these years several of the witnesses disappeared and the details of the collision had faded from the memory of others, but it does not appear that there were any ill results therefrom which the claimant is entitled to urge. Enough knowledge of the facts remained to definitely place the fault, as above determined. The claimant of the tug urges that he was a bona fide purchaser without notice. If this were established, though doubtful, it might aid him but it appears that when the purchase was made he received a warranty bill of sale by which he is entitled to recover from the vendors anything he may be obliged to pay to protect the vessel in this action. The vendors were shown to be able to respond for claims established against the tug existing prior to his purchase. It appears that they were called upon by him when the tug was seized and that they have in fact been obtaining witnesses and defending the action. There are certainly no equitable circumstances in this case which could prevent the injured parties from recovering their damages.

There will be a decree for the libellants against the Mars, with an order of reference. The libel is dismissed as to the Little.